UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY DANIELSSON,<br><br>Plaintiff,<br><br>v.<br><br>BLOOD CENTERS OF THE PACIFIC, et al.,<br><br>Defendants. | Case No. 19-cv-04592-JCS<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 16 |

## I. INTRODUCTION

This is a putative class action that was initially filed in the Superior Court of California for the County of San Francisco. Named Plaintiff Ruby Danielsson asserts ten claims against Defendant, her former employer Vitalant,[1] for willfully failing to pay wages by failing to pay for missed meal and rest breaks; requiring Plaintiff and other class members to work overtime without compensation; failing to accurately calculate shift differentials, non-discretionary bonuses, and performance pay; depriving Plaintiff and other class members of mandatory meal and rest periods; failing to pay wages owed to Plaintiff and other class members upon discharge and resignation; non-compliance with wage reporting; keeping inaccurate payroll records; and engaging in unfair trade practices. Vitalant removed the case to federal court under the Class Action Fairness Act. Danielsson moves to remand. The Court held a hearing on December 20, 2019. For the reasons discussed below, Danielsson's motion to remand is DENIED.[2]

---

[1] Vitalant asserts in its notice of removal, and Danielsson does not dispute, that Defendant was erroneously named "Blood Centers of the Pacific" and "Blood Systems," an entity that does not exist. Rather, Defendant did business as "Blood Centers of the Pacific" and "BloodSource, Inc." until the two merged into the company now known as Vitalant.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Allegations in the Complaint

Danielsson ("Plaintiff"), individually and on behalf of others similarly situated, filed her Complaint (dkt. 1, Ex. A) in the Superior Court of California for the County of San Francisco. She alleges that her former employer Vitalant, formally known as "BloodSource, Inc." and "Blood Centers of the Pacific," and Does 1 through 100 (hereinafter referred to collectively as "Defendant") engaged in a "pattern and practice" of violating California labor laws. Compl. ¶ 26. Specifically, she alleges that Vitalant is responsible for failure to pay overtime compensation (Cal. Lab. Code §§ 510 and 1198); failure to provide meal periods (Cal. Lab. Code §§ 226.7 and 512(a)); failure to provide rest periods (Cal. Lab. Code § 226.7); failure to pay minimum wages (Cal. Lab. Code §§ 1194, 1197, and 1197.1); failure to timely pay wages upon termination of employment (Cal. Lab. Code §§ 201 and 202); failure to timely pay wages during employment (Cal. Lab. Code § 204); failure to provide accurate wage statements (Cal. Lab. Code § 226(a)); failure to maintain required records (Cal. Lab. Code § 1174(d)); failure to reimburse for expenses (Cal. Lab. Code §§ 2800 and 2802); and unfair business practices (Cal. Bus. & Prof. Code §§ 17200, *et seq.*). *See generally* Compl. (dkt. 1, Ex. A).

### B. Removal to Federal Court

Defendant removed the action to this Court on August 9, 2019 based on the Class Action Fairness Act ("CAFA"), codified as 28 U.S.C. § 1332(d). Notice of Removal ("Notice," dkt. 1). Under CAFA, federal courts have original jurisdiction over class actions when there are at least 100 class members in the putative class, when the defendant is a citizen of a different state than at least one class member, and when the combined claims of all class members add up to an amount in controversy over $5 million. *See* 28 U.S.C. § 1332(d). Here, Plaintiff claims that the putative class includes all non-exempt employees from March 29, 2015 to present. Compl. ¶ 14. According to Defendant, there are 1,257 such members.[3] Reply (dkt. 18) at 9; *see also*

---

[3] Defendant initially estimated that there were 3,197 such employees during that time. Notice (dkt. 1) at 4–5. After Plaintiff pointed out that some employees had been counted twice, Mot. (dkt. 16) at 6, Defendant amended its estimate to 1,257.

Supplemental Declaration of Elizabeth Sweeley (dkt. 18, Ex. A) ¶ 3. In addition, because "Vitalant is an Arizona non-profit corporation with its principal place of business in Arizona" and the named Plaintiff is a citizen of California, CAFA's diversity requirement is met. Notice at 7; *see also* Declaration of Bhavi A. Shah (dkt. 6) ¶ 4 ("Defendant Vitalant is, and at all times relevant to this action was, organized in the State of Arizona. . . . Vitalant is not a citizen of California."). Initially, Defendant calculated the amount in controversy to be "as high as: $25,229,880." Notice at 7 (emphasis omitted). It arrived at the number through the following calculation:

> ($26 (average hourly rate) x 5 (five missed meal breaks per week) x 97,038 (total number of weeks for which the entire putative class was employed)) + ($26 (average hourly rate) x 5 (five missed rest breaks per week) x 97,038 (total number of weeks for which the entire putative class was employed).

*Id*. The estimated amount in controversy exceeding $5 million, Defendant removed to this Court.

### C. Motion to Remand to State Court

Plaintiff filed a Motion to Remand (dkt. 16) back to the Superior Court on September 4, 2019 based on Defendant's initial amount in controversy. She contested the sufficiency of Defendant's evidence and the reasonableness of the assumptions that formed the basis of Defendant's calculation, arguing that "Defendant proposes violation rates based entirely upon self-serving assumptions that lack adequate evidentiary support and are tantamount to impermissible speculation." Mot. at 2. First, Plaintiff argued that the evidence Defendant provided—the Declaration of Elizabeth Sweeley (dkt. 5)—was insufficient to support its calculations. Mot. at 5 (citing *Contreras v. J.R. Simplot Co.*, No. 2:17-cv-00585-KJM-EFB, 2017 U.S. Dist. LEXIS 166359, at *7–8 (E.D. Cal. Oct. 5, 2017); *Rinaldi v. Dolgen Cal. LLC*, No. 2:16-cv-02501-KJM-EFB, 2017 U.S. Dist. LEXIS 126540, at *9 (E.D. Cal. Aug. 8, 2017)). Plaintiff argued that Defendant should produce the documents underlying Sweeley's declaration. *Id*. at 5–6.

In addition, Plaintiff claimed that the assumptions underlying Defendant's calculation were unreasonable. Plaintiff argued that Defendant failed to "provide any reasonable basis in fact or evidence for assuming that violations occurred at a 100% rate," which she contended is an unreasonable interpretation of the "pattern and practice" language of the Complaint. *Id*. at 8, 11 (citing *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015); *Moreno v. Ignite*

3

*Rest. Group*, No. C 13-05091 SI, 2014 WL 1154063, at *5 (N.D. Cal. Mar. 20, 2014)). In addition, Plaintiff argued that Defendant failed to provide evidence for its assumed average rate of pay. *Id*. at 9. Plaintiff pointed to several cases in this circuit where courts have struck down as unreasonable estimates based on violation rates lower than the rate Defendant assumed in its original calculation. *Id*. at 9–12 (citing *Ruby v. State Farm Gen. Ins. Co.*, No. C 10-02252 SI, 2010 U.S. Dist. LEXIS 88812, at *11–12 (N.D. Cal. Aug. 4, 2010) (finding that an assumption of one meal and one rest break violation per week was not supported by the language of the complaint or the evidence provided by the defendant); *Armstrong v. Ruan Transp. Corp.*, No. EDCV 16-1143-VAP (SPx), 2016 U.S. Dist. LEXIS 148460, at *14 (C.D. Cal. Oct. 25, 2016) (finding a single rest or meal break violation per week was not supported by the language of the plaintiff's complaint and that the defendant did not provide adequate factual support for the assumption); *Letuligasenoa v. Int'l Paper Co.*, No. 5:13-CV-05272-EJD, 2014 WL 2115246, at *5 (N.D. Cal. May 20, 2014) (finding a 100% uniform violation rate unsupported by the plaintiff's complaint and "speculative" given the defendant's evidence)).

Plaintiff made a similar argument rebutting Defendant's assumption of one hour of overtime per week: "Defendant provides no factual or evidentiary basis nor any explanation for any of these assumptions. Defendant's assumptions also fail to consider weeks during which class members' shifts were too short to trigger overtime, and of course is based on Defendant's baseless assumption that every shift was an eight-hour shift . . . ." *Id*. at 13 (emphasis omitted). Plaintiff cites cases in this circuit where "courts in similar circumstances have found that even a one-hour estimate of uncompensated overtime per week is too speculative when not supported by any evidence." *Id*. at 13–14 (citing cases).

Finally, Plaintiff asserted that Defendant waived any amount in controversy based on the remaining causes of action or attorney's fees because it did not calculate those amounts in its Notice of Removal. *Id*. at 15.

D. **November 1st Order and Supplemental Briefings**

On November 1, 2019, the Court ordered both parties "to submit additional evidence related to the violation rate and the disputed amount in controversy," based on the Ninth Circuit's

4

decision in *Ibarra*, 775 F.3d at 1193. Order to File Additional Evidence ("Order," dkt. 27) at 2. In *Ibarra*, the court was faced with calculating the amount in controversy for CAFA jurisdiction in a similar wage and hour dispute where the defendant "relied on a declaration of its senior director of employee services and administration, which had a table listing all of its non-exempt employees and their corresponding number of shifts worked in excess of 5 hours and 3.5 hours during the relevant class period." *Id*. at 1198. The court vacated and remanded back to the lower court and ordered "that 'both sides' should have an opportunity to submit evidence and argument." *Id*. (citing *Dart Basin Operating Co. v. Owens*, 574 U.S. 81 (2014); 28 U.S.C. § 1446(c)(2)(B)).

### 1. Defendant's Supplemental Briefing

In response to the Order, Defendant submitted a third declaration of Elizabeth Sweeley. Third Sweeley Decl. (dkt. 29-1) ¶¶ 1–4. Attached to this declaration were four exhibits which summarized the data that Sweeley used to calculate the amount in controversy. *Id*. In Exhibit 1 to Sweeley's declaration, she provided a spreadsheet containing an identification number for 1,225 of the putative class members along with their hourly rate of pay, the dates of their hire and termination, the number of wage statements they received during the class period, and the "total alleged amount of meal and rest period premium pay in controversy." *Id*. ¶ 5. Assuming a 20% violation rate for meal and rest breaks, Defendant estimates the amount in controversy related to rest and meal break violations is $6,021,808. *Id*.

Exhibit 2 again lists employee ID numbers, rate of pay, and dates of employment and wage statements during the putative class period. It also lists the number of alleges overtime violations assuming one hour per week. *Id*. ¶ 6. Based on this spreadsheet, Defendant calculates a $4,516,356 amount in controversy based on overtime violations. *Id*.

Exhibit 3 focuses on the 20,444 wage statements issued by Defendant during the putative class period. *Id*. ¶ 7. It notes each of the total amount of penalties assigned for each wage statement and, assuming a 100% wage statement violation rate, Defendant calculates a $2,002,500 amount in controversy for improper wage statements.

Finally, Exhibit 4 lists employee's ID number, dates of employment, rate of pay, "the number of days that have passed between each employee's termination and May 25, 2019, and the

5

total waiting time penalties in controversy during the time period from March 25, 2016 to May 25, 2019." *Id*. ¶ 8. Assuming "up to 30 days of waiting time penalties for each terminated employee, depending on their actual termination date," Defendant asserts that the amount in controversy associated with waiting time penalties is $2,858,752. *Id*.

Defendant argues that it is appropriate to include attorney's fees based on 25% of projected damages. Def.'s Suppl. Brief (dkt. 29) at 3 (citing *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017); *Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *6 (N.D. Cal. July 10, 2014)). Defendant calculates this number based on its assessment of the amounts in controversy for rest and meal breaks and overtime. *Id*. Based on these calculations, Defendant claims the amount in controversy regarding attorney's fees is $2,634,541. *Id*.

Based on the records provided in the Third Sweeley Declaration and its calculation of attorney's fees, Defendant argues that the total amount in controversy is $13,172,705 with meal and rest breaks, overtime payments, and attorney's fees. *Id*. at 3. Adding waiting time and wage statement violation estimates brings the amount in controversy estimate to $18,033,957. *See* Third Sweeley Decl. ¶¶ 7–8 (estimating the amount in controversy arising from wage statement and waiting time violations).

### 2. Plaintiff's Supplemental Briefing

Plaintiff contests the conclusions Defendant drew from the data it provided, particularly its continued assumption of one hour of overtime per week:

> Defendant's assumption a [sic] 100% violation rate for overtime fails in light of the fact that some employees appear to be working four-hour days, and thus less likely to incur unpaid overtime; and that the actual hours worked and apparently days worked varies substantially employee to employee, and thus violation rates are unlikely to be universal, never mind identical. Similarly, with, per the additional evidence submitted herewith by Plaintiff, some employees working only 8 hours per week, it is impossible that such employees experienced five rest period violations per week. . . . Further, as Defendant's purported amount-in-controversy for attorneys' fees is based on these unsupported violation rates, and thus is unsupported in and of itself, Defendant's asserted amount-in-controversy for

attorneys' fees fails to meet the burden of proof, which falls on Defendant.

Pl.'s Suppl. Brief (dkt. 30) at 3. Plaintiff points to her own evidentiary summary, Klein Decl. (dkt. 30-1, Ex. 1), which lists the names, departments, job titles, hire dates, and weekly hours of thirty-two members of the putative class. According to Plaintiff, this spreadsheet reveals that "some employees worked only 20 hours per week," meaning that they could have "only worked four hours per day, and thus were not entitled to meal periods at all, and so could not have experienced meal period violations at all." *Id*. at 2.

Plaintiff also requested, and Defendant provided, the timecard records of Ruby Danielsson, the named plaintiff in the action. Bowman Declaration (dkt. 31, Ex. A). Plaintiff contends that Danielsson's timecard records "do not provide support for Defendant's supposed violation rates as there are weeks without any apparent meal period violation." Second Klein Declaration (dkt. 32) ¶ 22.

## III. ANALYSIS

### A. Legal Standard

Federal courts have limited subject matter jurisdiction and may only hear cases falling within that jurisdiction. Generally, a defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441. The removal statutes are construed restrictively to limit removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108−09 (1941). The Ninth Circuit recognizes a "strong presumption against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks omitted). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)).

The defendant bears the burden of showing that removal is proper. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). To remove to federal court under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 547 U.S. at 88. "Congress, by borrowing the

7

familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Id.* at 81 (quoting H.R. Rep. No. 100-889, p. 71 (1988) (alteration in original)). The removing party need not make evidentiary submissions in its initial notice of removal. *Id.* at 84.

If the plaintiff's complaint does not include a total amount in controversy, the defendant must prove its estimate of the amount by preponderance of the evidence. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). When, as here, the plaintiff disputes the defendant's assertion of the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)). The amount in controversy is not synonymous with the amount, if any, that the plaintiff will ultimately recover; rather, it is a jurisdictional question that is "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).

**B.    Defendant's Estimate Is Supported by the Preponderance of the Evidence**

When the plaintiff's complaint does not contain an estimate of damages, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). For a contested amount in controversy to be supported by preponderance of the evidence, the defendant must "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" $5 million. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (internal citation omitted). If the defendant makes any assumptions when calculating the amount in controversy, those assumptions must be reasonable. *Ibarra*, 775 F.3d at 1199. An assumption is reasonable when it is supported by the allegations of the plaintiff's complaint. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). The Court finds that the evidence Defendant provided in its Supplemental Brief and Third Sweeley Declaration establishes that it is more likely than not that the amount of controversy exceeds the $5 million minimum

8

required for CAFA jurisdiction.

The Court must decide whether Defendant's estimate of the amount in controversy, which rests on an assumption of a 20% violation rate for rest and meal breaks and one hour of unpaid overtime per week, is based on reasonable assumptions and supported by preponderance of the evidence. The Court finds that it is.

"[D]efendants may rely on calculations to satisfy their burden so long as their calculations are good faith, reliable estimates based on the pleadings and other evidence in the record." *Ellis v. Pac. Bell Tel. Co.*, No. SACV 10-01141-CJC-FF, 2011 WL 499390, at *2 (C.D. Cal. Feb. 10, 2011) (citing *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009); *Jimenez v. Allstate Ins. Co.*, No. CV 10-8486 AHM (FFMx), 2011 WL 65764, at *2–3 (C.D. Cal. Jan.7, 2011)). Defendant calculated a total $13,172,705 amount in controversy for meal and rest break violations, unpaid overtime, and attorney's fees. Def.'s Suppl. Brief at 3. Here, Defendant's calculations are supported by the evidence offered in the Third Sweeley Declaration.

The Third Sweeley Declaration contains a summary of Defendant's employment records, including "each putative class member's specific dates of employment, and for each respective day of employment, from March 29, 2015 to May 25, 2019, that employee's pay rate and number of hours worked." Third Sweeley Decl. ¶ 2. Based on this information, Defendant calculated the amount in controversy to be $13,172,702. Def.'s Suppl. Brief at 3. This calculation includes estimated violations of rest and meal breaks, overtime pay, and attorney's fees. *Id*. The data summary provides a factual basis for several of the variables in Defendant's calculation: class members' hourly rate of pay, each class member's dates of employment, and the number of wage statements at issue for each class member. The Court finds that Defendant's calculation is a reliable estimate based on evidence in the record. Accordingly, these evidentiary submissions satisfy Defendant's burden of proof for estimating the amount in controversy.

### 1. Defendant's Assumed Violation Rate for Rest and Meal Breaks Is Reasonable

Defendant made several assumptions in its final calculation of the amount in controversy: it assumed a 20% violation rate of rest and meal breaks, two hours of unpaid overtime per wage

statement, and a uniform violation rate across all members of the class. *See generally* Def.'s Suppl. Brief at 2. Based on these assumptions and the data in the Third Sweeley Declaration, Defendant estimates that the amount in controversy attributable to Plaintiff's rest and meal break claims is $6,021,808. Def.'s Suppl. Brief at 3.

The Ninth Circuit has made clear that "[a]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*, 936 F.3d at 927 (quoting *Ibarra*, 775 F.3d at 1199). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id*. (citing *Ibarra*, 775 F.3d at 1198–99). Defendant based its assumptions on Plaintiff's allegation of a "pattern and practice" of labor violations. *See* Compl. ¶ 26. The Court must decide whether the "pattern and practice" allegation in the Complaint supports the assumptions Defendant made when it calculated the amount in controversy. The Court finds that it does.

Defendant's first assumption—a 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a "pattern and practice" of such violations. Courts in this circuit have found that allegations of a "pattern and practice" of conduct support a 20% violation rate as reasonable. *See, e.g.*, *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations); *Mendoza v. Savage Servs. Corp.*, No. 2:19-CV-00122-RGK-MAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (finding that a 20% violation rate for meal and rest breaks was reasonable where the complaint alleged a "pattern and practice" of violations, and noting that courts in the Central District of California "routinely apply a 20% violation rate . . . for meal and rest period premiums" and citing cases). This Court also finds that a 20% meal and rest break is reasonable given the allegations in the complaint.

Defendant's rest and meal break calculation also assume that the 20% violation rate applies uniformly across all the members of the putative class. Plaintiff contends that the record she provided, which include eleven employees who worked fewer than forty hours per week, undermines the reasonableness of Defendant's calculations because those employees would not

have worked full days if they worked five days per week, and thus would not have been entitled to meal breaks. Pl.'s Suppl. Brief at 2; *see also* Klein Decl. Ex. 1 (containing a spreadsheet with selected employees' weekly hours). In addition, named plaintiff Ruby Danielsson's timecard data includes "weeks without any apparent meal period violation." Second Klein Decl. ¶ 22.

Plaintiff's argument does not undermine the Court's conclusion that the assumptions Defendant made in its calculations were reasonable, including assuming a uniform distribution of the violation rate. "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite[ ] amount . . . ." *Arias*, 936 F.3d at 927 (internal quotation marks omitted). Plaintiff's argument is undercut by the nature of averages: even if a handful of class members may have experienced fewer violations than Defendant assumes, it is equally probable that other class members experienced more violations than Defendant assumed. Defendant need not prove the exact violation rate for each member of the class for its amount in controversy estimate to be based on reasonable assumptions. *Id.* ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" (quoting *Ibarra*, 775 F.3d at 1199)).

The amount in controversy estimate required to remove under CAFA "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Id.* (internal quotation marks omitted) (quoting *Lewis*, 627 F.3d at 400). CAFA does not require Defendant "to comb through its records to identify and calculate the exact frequency of violations," *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (citation and internal quotation marks omitted), nor does it require Defendant "prove it actually violated the law at the assumed rate." *Arias*, 936 F.3d at 927. Because the amount in controversy is an estimate of the total amount potentially at stake, not a precise computation of the defendant's actual liability, Plaintiff has not shown that Defendant's assumed violation rates were unreasonable.

For the reasons explained above, Defendant's assumptions are underlain by the allegations in the Complaint. Accordingly, Plaintiff's supplemental evidence and alternative interpretation of

11

Defendant's evidence does not convince the Court that Defendant's assumptions are unreasonable.

### 2. Defendant's Assumed Violation Rate for Unpaid Overtime Is Reasonable

In addition, Defendant calculates the amount of controversy arising out of its alleged "pattern and practice" of unpaid overtime violations by assuming class members are entitled to one hour of unpaid overtime per week, or two hours per biweekly pay period. Def.'s Suppl. Brief at 3; *see also* Third Sweeley Decl., Ex. 2 (assuming two hours of unpaid overtime per pay period). Defendant calculates that the amount in controversy for unpaid overtime is $4,516,356. *Id*. The Court also finds this assumption reasonable.

Just as the violation rate for meal and rest break violations is grounded in the language of the complaint, so too is the assumption of one hour of unpaid overtime per week. Plaintiff alleged that Defendant engaged in a "pattern and practice of . . . failing to pay [employees] for all regular and/or overtime wages earned." Compl. ¶ 26. Courts in this circuit have held that an hour of unpaid overtime per week is a reasonable estimate when the complaint alleges a "pattern and practice" of failing to pay overtime wages. *See, e.g.*, *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (finding that one hour of unpaid overtime per week was reasonable when the plaintiff alleged a "pattern and practice" of unpaid overtime); *Mendoza*, 2019 WL 1260629 at *2 (finding that one hour of unpaid overtime per week was reasonable where the complaint alleged a "pattern and practice" of violations, and noting that courts in the Central District of California find "a conservative 20% violation rate, or one hour of overtime pay per week, to be reasonable" and citing cases); *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week."). This Court follows this trend and finds that one hour of unpaid overtime per week, or two hours per pay period, is a reasonable estimate for overtime violations based on a complaint alleging a "pattern and practice" of Defendant failing to pay class members for overtime hours worked.

### 3. Defendant's Calculation of Attorney's Fees Is Reasonable

Based on its calculations of the amount in controversy for rest and meal break violations and unpaid overtime, Defendant estimates that the amount in controversy for attorney's fees is $2,634,541. Def.'s Suppl. Br. at 3. Defendant's estimate of attorneys' fees being 25% of the underlying amount in controversy is reasonable. "[W]hen a statute . . . provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)). Here, several of the California wage and hour laws mentioned in the Compliant award attorney's fees to a successful plaintiff. *See* Cal. Lab. Code §§ 226, 1194, 2802. Therefore, an estimate of attorney's fees must be included in the estimated amount in controversy.

Courts in this circuit consistently hold that 25% of class recovery is an appropriate estimate for attorney's fees. *See Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Rwomwijhu v. SMX, LLC*, No. CV 16-08105-AB (PJWx), 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017); *Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *6 (N.D. Cal. July 10, 2014). Defendant used the 25% benchmark to calculate an award of attorney's fees from an amount in controversy that is supported by preponderance of the evidence, for the reasons described above.

This Court finds that 25% of a reasonable and well-supported amount in controversy is an appropriate benchmark estimate for attorney's fees for CAFA removal purposes.

### 4. Reasonableness of Defendant's Other Calculations

Defendant also calculated the amount in controversy resulting from wage statement and waiting time claims. Def.'s Suppl. Br. at 3. For the reasons described above, Defendant's estimate exceeds the CAFA jurisdiction based on meal break, rest break, and overtime violations. The Court, therefore, will not review Defendant's calculations for wage statement and waiting time violations. *See Ibarra*, 775 F.3d at 1198 n.2 ("Although the complaint alleged multiple labor law violations . . . [defendant] contends that the amount in controversy for the meal and break penalties alone exceeds $5 million. If so, for purposes of assessing CAFA jurisdiction, there is no need to calculate damages on other claims.").

## IV. CONCLUSION

For the reasons discussed above, Defendant Vitalant has shown by a preponderance of the evidence that the amount in controversy in this action is over $5 million, bringing it within this Court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiff's motion to remand is therefore DENIED.

**IT IS SO ORDERED.**

Dated: December 30, 2019

JOSEPH C. SPERO
Chief Magistrate Judge